UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
FELIX W. ENDICO, Individually and Derivatively on
Behalf of Nominal Defendant UFS. Industries, Inc.,

                        Plaintiff,

           -against-

WILLIAM A. ENDICO and ACE ENDICO CORP.,

                        Defendants,

And

UFS INDUSTRIES, INC.,

                   Nominal Defendant.
-------------------------------------------------------------X

**OPINION AND ORDER**

19 Civ. 7231 (JCM)

      Plaintiff Felix W. Endico ("Plaintiff" or "Felix") brings this action against Defendants William A. Endico ("William") and ACE Endico Corp. ("ACE Endico"), (collectively, "Defendants"), and nominal Defendant UFS Industries, Inc., d/b/a Sally Sherman ("Sally Sherman"), alleging the following: corporate waste, aiding and abetting corporate waste, breach of fiduciary duty (individually and derivatively), aiding and abetting breach of fiduciary duty (individually and derivatively), unjust enrichment, aiding and abetting unjust enrichment, conversion, aiding and abetting conversion, unfair competition, aiding and abetting unfair competition, constructive trust, and accounting. (Docket No. 1-1).  Plaintiff filed his complaint on July 18, 2019 (the "Complaint"), in the Supreme Court of the State of New York, County of Westchester. (*Id.*).  On August 2, 2019, Defendants removed the action to this Court pursuant to 28 U.S.C. §§ 1332, 1441 and 1446. (Docket No. 1).  Before the Court is Defendants' motion for

summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure (the "Motion").[1]

(Docket No. 55).  Plaintiff opposed the Motion, (Docket No. 68), and Defendants replied,

(Docket No. 69).  For the reasons set forth below, Defendants' Motion is granted in part and

denied in part.

## I.  BACKGROUND

This action involves two brothers, Felix and William, who are each 50% shareholders in

their family food manufacturing business, Sally Sherman.[2]  The following facts are gathered

from Defendants' Rule 56.1 Statement of Material Facts, (Docket No. 58), Plaintiff's Opposition

to Defendants' Motion for Summary Judgment, (Docket No. 65),[3] the exhibits attached to the

---

[1] This action is before this Court for all purposes on the consent of the parties, pursuant to 28 U.S.C. § 636(c). (Docket No. 51).

[2] This is a family dispute, and like all family disputes it would have been preferable if it was resolved by the family privately rather than through litigation.  As Judge McCurn aptly said in a similar case, "the law of business organizations, unlike the family bond, is not well suited to accommodate the needs of family members." *Natoli v. Carriage House Motor Inn, Inc.*, No. 85-CV-1457, 1988 WL 53397, at *1 (N.D.N.Y. May 24, 1988).

[3] When facts stated in a party's Rule 56.1 statement are supported by testimonial or documentary evidence and denied by only a conclusory statement by the other party without citation to conflicting testimonial or documentary evidence, the Court deems such facts true.  *See Annunziata v. Int'l Bhd. of Elec. Workers Local Union # 363*, 15-CV-03363 (NSR), 2018 WL 2416568, at *1, n.1 (S.D.N.Y. May 29, 2018); S.D.N.Y. Local Rule 56.1(c) ("Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed admitted for purposes of the motion unless specifically controverted . . ."); S.D.N.Y. Local Rule 56.1(d) ("Each statement by the movant or opponent . . . controverting any statement of material fact[] must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c).").

Plaintiff's response marks certain statements as "disputed," but does not identify any actual factual inconsistency.  Where such responses do not identify a true factual dispute, the Court treats the statement as undisputed. *See Martin v. Sprint United Mgmt. Co.*, 273 F. Supp. 3d 404, 408 n.1 (S.D.N.Y. 2017).

Similarly, Plaintiff responds several times as follows: "Plaintiff does not have knowledge or information sufficient to either agree with or dispute the accuracy of this statement." (*See, e.g.*, Docket No. 65 ¶ 34).  The Court treats the statements in which Plaintiff responds as such as undisputed and accepts them as true because "[t]his is not a permissible basis on which to rebut a fact submitted as undisputed by a moving party." *Whitehurst v. 230 Fifth, Inc.*, 998 F. Supp. 2d 233, 248 (S.D.N.Y. 2014); *see also Russell v. Aid to Developmentally Disabled, Inc.*, 753 F. App'x 9, 12-13 (2d Cir. 2018); *see also Cooper v. City of New Rochelle*, 925 F. Supp. 2d 588, 602 (S.D.N.Y. 2013).

Finally, Plaintiff's response contains assertions that are unsupported by any citation to the record.  The Court will not consider these assertions because "a Local Rule 56.1 statement is not itself a vehicle for making factual assertions that are otherwise unsupported in the record." *See Holtz v. Rockefeller & Co.*, 258 F.3d 62, 74 (2d Cir. 2001), *abrogated on other grounds by Gross v. FBL Fin. Servs.*, 557 U.S. 167, 175-77 (2009).  The Second Circuit

parties' submissions, and the declarations of William and Felix, (Docket Nos. 57 and 66).[4]  The

facts are construed in the light most favorable to Plaintiff as the non-moving party. *See*

*Wandering Dago, Inc. v. Destito*, 879 F.3d 20, 30 (2d Cir. 2018). The facts set forth herein are

not in dispute, unless otherwise noted.

## A.  Endico Family Businesses and the Founding of ACE Endico

William and Felix's father, Michael Endico, Sr. ("Michael"), and their uncles, owned two

family companies – Endico Potatoes and Sally Sherman. (Docket No. 67-2 at 13:14-19).[5]

Ultimately, the businesses split. (*Id*.).  Thereafter, William and Felix's uncles ran Endico

Potatoes, and Michael ran Sally Sherman until his death in 2010. (*Id*.; Docket No. 57 ¶ 2).

Sally Sherman, a Mount Vernon-based food manufacturer, has been an Endico family

business since 1971. (Docket No. 66 ¶ 2; Docket No. 57 ¶ 2).  It makes food such as potato salad

and coleslaw. (Docket No. 57 ¶ 2).  It does not sell food directly to end-users like supermarkets

and delis, but rather relies on food service and master distributors to sell its products. (*Id*. ¶ 2).

From 1979 to 1984, Felix worked as an operations manager for Sally Sherman. (Docket

No. 66 ¶ 5).  In 1984, Felix left the company. (*Id*.).  Thereafter, Felix continued to work in food

manufacturing and assisted his father on Sally Sherman projects. (*Id*.).

From roughly 1960 to 1982, William worked in various roles in the Endico family

---

has explained that "[w]here . . . the record does not support the assertions in a Local Rule 56.1 statement, those assertions should be disregarded and the record reviewed independently" of such assertions. *Id.*

[4] Whereas the Court need only consider the cited materials in a Rule 56.1 statement, the Court may also rely on evidence in the record even if uncited. *See Jackson v. Fed. Exp.*, 766 F.3d 189, 194 (2d Cir. 2014); Fed. R. Civ. P. 56(c)(3).

[5] The publicly filed versions of the depositions of William and Felix, (Docket Nos. 64-2, 64-3, 67-1, and 67-2), contain redactions because they reference information designated by Defendants as confidential.  The publicly-filed version of this Opinion and Order includes only information that the Court deems not to be protected based on, among other things, the contents of Defendants' publicly-filed brief, declaration and 56.1 statement. (Docket Nos. 56-58).

businesses, ultimately serving as Vice President. (Docket No. 57 ¶ 3; Docket No. 66 ¶ 6).  In 1982, William left the family businesses and founded ACE Endico. (Docket No. 57 ¶ 4; Docket No. 66 ¶ 7).  William became, and remains today, a 61% shareholder of ACE Endico, with his partner owning the remaining 39%. (Docket No. 66 ¶¶ 2, 7).

     ACE Endico is a food and food service distribution company based in Brewster, New York – it does not manufacture its own food. (Docket No. 57 ¶¶ 4, 6; Docket No. 58 ¶¶ 7-8; Docket No. 65 ¶¶ 7-8).  ACE Endico distributes food and food service products to venues like restaurants, pizzerias, sports arenas and health care facilities, generating hundreds of millions of dollars in annual revenues. (Docket No. 57 ¶ 6).

**B.  ACE Endico's Business Relationship with Sally Sherman**

     Shortly after ACE Endico was founded, it began doing business with Sally Sherman, and in or about 1985, Michael made ACE Endico one of Sally Sherman's master distributors. (Docket No. 58 ¶ 12; Docket No. 65 ¶ 12).  At the same time, Michael also instituted a 10% discount on the sales from Sally Sherman to ACE Endico, which was the discount Sally Sherman provided to master distributors. (Docket No. 58 ¶¶ 15-16; Docket No. 65 ¶¶ 15-16; Docket No. 66 ¶ 10).  William testified that there was no written contract formalizing this arrangement and the discount was not reflected in purchase orders or invoices. (Docket Nos. 60-1 and 64-2 at 34:6-35:25).  Instead, when ACE Endico received invoices showing the regular price, they discounted it by 10% before paying it. (*Id*.).  This discount arrangement continued even after Michael's death when his estate's executor managed Sally Sherman. (Docket No. 58 ¶ 17; Docket No. 65 ¶ 17).

     In its role as distributor for Sally Sherman, ACE Endico purchased potato salad and other foods and resold them to smaller customers along with other food service products. (Docket No.

58 ¶¶ 13-14; Docket No. 65 ¶¶ 13-14).  The distribution of Sally Sherman products constituted a

fraction of ACE Endico's business, and the parties dispute whether ACE Endico's purchases

from Sally Sherman totaled approximately one or two million dollars per year. (Docket No. 58 ¶

18; Docket No. 65 ¶ 18; Docket No. 66 ¶ 21).

### C.  Michael Dies and His Estate Takes Over Control of Sally Sherman

In 2010, Michael died and his estate became the 100% owner of Sally Sherman, with the

estate's executor, Kenneth Nohavicka, managing the company from 2010 through 2012. (Docket

No. 57 ¶ 7).  Nohavicka was ineffective as manager and made a "mess" of Sally Sherman's

operations by requiring all decisions to be made through him, attending work inconsistently, and

relying on costly consultant services. (*Id*. ¶ 8; Docket No. 58 ¶¶ 23, 25; Docket No. 65 ¶¶ 23,

25).  Under Nohavicka's management, Sally Sherman had high expenses and a minimal sales

force. (Docket No. 57 ¶ 8).  At this time, big supermarket chains like A&P, Waldbaums,

Pathmark, and Food Emporium also closed, causing Sally Sherman to lose those accounts.

(Docket No. 57 ¶ 8; Docket No. 58 ¶ 24; Docket No. 65 ¶ 24).  Sally Sherman also had limited

cash flow and poor credit, and underwent an FDA inspection. (Docket No. 57 ¶ 8).

During Nohavicka's time as manager, he continued unchanged the prior business

relationship between Sally Sherman and ACE Endico. (Docket No. 57 ¶ 8).  However, he

excluded William and Felix from Sally Sherman's management, removing them from Sally

Sherman's five-person board of directors and even getting a restraining order against them. (*Id*.

¶¶ 7-8).

### D.  William Takes Over Management of Sally Sherman

In or about 2012, Nohavicka resigned from his role as estate executor and William

stepped into the position. (*Id*. ¶ 9).  Around the same time, William and Felix agreed that

William would act as CEO of Sally Sherman, (Docket No. 57 ¶ 10; Docket No. 58 ¶ 32; Docket No. 65 ¶ 32), though Felix asserts the agreement was based on the understanding that both brothers had to approve strategic decisions for the company, (Docket No. 65 ¶ 32; Docket No. 66 ¶ 17).  On or about August 1, 2013, William split Sally Sherman's stock, giving 50% to himself and 50% to Felix. (Docket No. 57 ¶ 9; Docket No. 66 ¶ 17).

As CEO of Sally Sherman, William does not receive a salary in the form of W-2 income, (Docket No. 57 ¶ 10), though Felix testified that he understands salary to include a "pecuniary award" like the financial benefits that William receives from Sally Sherman's transactions with ACE Endico, (Docket No. 65 ¶ 33; Docket No. 67-1 at 156:2-157:21).  Not long after taking over, William successfully led Sally Sherman through an FDA inspection. (Docket No. 57 ¶ 10).

In 2017, William reduced the discount that ACE Endico was receiving from Sally Sherman from 10% to 6%, (Docket No. 58 ¶ 37; Docket No. 65 ¶ 36), testifying that he did so to help Sally Sherman at a time when it suffered a large financial loss. (Docket 60-1 at 160:5-23; Docket No. 60-2 at 191:15-20).  Felix testified that he believes both 10% and 6% are excessive discounts for a master distributor based on his experience in the food industry, explaining that 2% is the standard discount in the industry for master distributors. (Docket No. 60-2 at 188:17-194:5).

## E.  The Current Financial Status and Management of Sally Sherman

Currently, Sally Sherman has 70 employees, remains a going concern, and continues to be profitable. (Docket No. 58 ¶ 44; Docket No. 65 ¶ 44; Docket No. 57 ¶ 13).  In 2013, the first year after William and Felix took over the company, Sally Sherman operated at a substantial loss but remained a going concern, and then was profitable in 2014, 2015, 2019, 2020, and was projected to be profitable in 2021. (Docket No. 58 ¶ 46; Docket No. 65 ¶ 46; Docket No. 57 ¶

13).  The parties dispute whether Sally Sherman's value has increased or decreased since William began managing the company, with William alleging that it increased, (Docket No. 58 ¶ 45; Docket No. 57 ¶ 13), and Felix asserting that some years it increased and some years it decreased, (Docket No. 65 ¶ 45; Docket No. 66 ¶ 22).  Felix contends that the overall book value decreased from $11,100,000 in 2012 to about $7,200,000 now, which Felix stated is reflected in the balance sheet of Sally Sherman's tax returns. (*Id.*).

Sally Sherman is managed by an executive staff, consisting of a General Manager, a Vice President of Sales and Marketing, and an Accounting Coordinator, who sometimes makes business decisions in consultation with William and sometimes without his approval. (Docket No. 58 ¶¶ 48-50; Docket No. 57 ¶ 15).  Felix alleges, however, that William is the one who makes the important management decisions. (Docket No. 65 ¶¶ 48-50, Docket No. 66 ¶ 19). Felix asserts that William resisted formation of a board of directors and thus a board has never been elected. (Docket No. 66 ¶ 18).

The parties dispute the extent to which Felix has been allowed to participate in the management of Sally Sherman and whether he has had access to Sally Sherman's banking and accounting records.  For example, Felix has occasionally participated in Sally Sherman's affairs since becoming 50% owner in 2012, appearing at meetings and contacting executive staff with questions, comments and concerns including those regarding food production, personal payments and refurbishment of his office suite. (Docket No. 57 ¶¶ 14, 16; Docket No. 58 ¶¶ 53, 56; Docket No. 65 ¶¶ 53, 56).  However, Felix disputes that he could give instructions to the employees or get information from them without William's permission because William instructed Sally Sherman's employees to only report to and take directions from him. (Docket No. 66 ¶¶ 15-16). William asserts that Felix had access to Sally Sherman's financial records that are stored on a

software system and that he could retrieve these records at his pleasure from his home through a

special account. (Docket No. 58 ¶¶ 53-55; Docket No. 57 ¶ 17).  Felix alleges, however, that "the

account was useless" for accessing the records he was interested in and that he did not receive

proper assistance to obtain these records. (Docket No. 65 ¶ 55).  Felix testified that he wanted

access to monthly profit and loss statements, inventory adjustments and sales allowance

discounts, which the software system did not have. (Docket No. 64-3 at 112:07-123:12).  He

explained in his deposition that while he was "getting data all day long" if he wanted it, he was

not receiving information through an intermediary like an accountant who could interpret that

data. (*Id*. at 179:7-17).  Felix also testified that he did not have access to Sally Sherman's bank

records until about 2017. (*Id*. at 116:18-123:12).  He alleges that even though he is an equal

owner/shareholder with William, he is unable to exercise any management control. (Docket No.

66 ¶ 19).

**F.  The Current Business Relationship between ACE Endico and Sally Sherman**

The parties dispute whether ACE Endico and Sally Sherman each benefit from their

business relationship with the other. (Docket No. 58 ¶¶ 36-38, 40, 43, 45; Docket No. 65 ¶¶ 36-

38, 40, 43, 45).  William asserts that ACE Endico does not profit, but actually loses money, from

the sum of its business relationship with Sally Sherman. (Docket No. 58 ¶ 36; Docket No. 57 ¶

11).  William further contends that the loss only grew when William reduced the discount ACE

Endico was receiving from 10% to 6% in 2017. (Docket No. 58 ¶ 37; Docket No. 57 ¶ 11).  Felix

alleges, however, that ACE Endico profits from each purchase from Sally Sherman because

those purchases are at a discount. (Docket No. 65 ¶¶ 36-37; Docket No. 66 ¶ 21), while Sally

Sherman suffers a financial loss from these discounts, (Docket No. 65 ¶ 38; Docket No. 66 ¶ 21).

William further alleges that Sally Sherman benefits from its relationship with ACE Endico, for

instance through a $100,000 interest free loan that it received from ACE Endico. (Docket No. 58 ¶¶ 38, 40; Docket No. 57 ¶ 12).  However, Felix disputes that the $100,000 loan ACE Endico issued to Sally Sherman was interest free because ACE Endico was buying products below cost and getting a 10% discount on all purchases, (Docket No. 65 ¶ 40; Docket No. 67-1 at 185:12-21, 187:14-18).  William also asserts that Sally Sherman benefits from his "management and substantial business experience," (Docket No. 58 ¶ 43), and that he "spent thousands of hours and extraordinary effort, installing managers, consulting with them and other employees, and assisting in decision-making and operations, for no compensation," (Docket No. 58 ¶ 35; Docket No. 57 ¶ 10).  Felix admitted that William is a successful businessman and "very capable," and that "Sally Sherman benefited by his experience in the business." (Docket No. 64-3 at 70:16-71:4).  However, Felix disputes that William was not compensated because he alleges that William financially benefited from the transactions between Sally Sherman and ACE Endico. (Docket No. 65 ¶ 35).  Felix also claims that there are both positive and negative synergies from the relationship between ACE Endico and Sally Sherman, with the negative outweighing the positive. (Docket No. 65 ¶ 43; Docket No. 67-1 at 80:18-82:22).

The parties do not dispute, however, that ACE Endico provided specific benefits to Sally Sherman.  For instance, ACE Endico issued Sally Sherman approximately $500,000 in credit and allowed Sally Sherman not to repay it but to keep it as an account receivable, which helped Sally Sherman handle its cash flow and credit problems. (Docket No. 58 ¶ 39; Docket No. 65 ¶ 39; Docket No. 57 ¶ 12).  ACE Endico also helped Sally Sherman when it had difficulty getting supplies from Restaurant Depot and had trouble delivering products with its limited number of delivery trucks. (Docket No. 58 ¶ 41; Docket No. 65 ¶ 41; Docket No. 57 ¶ 12).  Additionally,

ACE Endico connected Sally Sherman to potential new business opportunities at no cost. (Docket No. 58 ¶ 42; Docket No. 65 ¶ 42; Docket No. 57 ¶ 12).

William further testified that Sally Sherman received special pricing from ACE Endico, which William testified he did "as an accommodation to Sally Sherman to try to help them." (Docket No. 60-1 at 105:3-107:21).  He testified that he also issued extended credit to Sally Sherman for nine or ten months on purchases it made from ACE Endico "to help them with the cash flow." (*Id.* at 116:7-10).

## II.  LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a).  The moving party has the initial burden of showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008). "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. A fact is material if it might affect the outcome of the suit under the governing law." *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009) (quoting *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008)) (internal quotations omitted).

In considering a motion for summary judgment, the Court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (quoting *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 126 (2d Cir. 2004)) (internal quotations omitted).  However, the nonmovant cannot defeat a motion for summary judgment by

relying on unsupported assertions, conjecture or surmise. *See Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995).  The nonmovant must also do more than show that there is "some metaphysical doubt as to the material facts." *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006) (quoting *Matsushita Elec. Indus Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).  To survive a motion for summary judgment, "the non-moving party must set forth significant, probative evidence on which a reasonable fact-finder could decide in its favor." *Senno v. Elmsford Union Free School Dist.*, 812 F. Supp. 2d 454, 467-68 (S.D.N.Y. 2011) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986)).

## III.  DISCUSSION

### A.  Abandoned Claims

Defendants argue on Reply that Plaintiff abandoned most of his claims by failing to respond to or oppose Defendants' arguments on those claims. (Docket No. 69 at 11-12). "Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way." *Swain v. Town of Wappinger*, No. 17-CIV-5420(JCM), 2019 WL 2994501, at *4 (S.D.N.Y. July 9, 2019); *see also Douglas v. Victor Cap. Grp.*, 21 F. Supp. 2d 379, 393 (S.D.N.Y. 1998) (collecting cases) (finding alleged claims abandoned where "Defendants' summary judgment motion specifically addressed all of these claims," but the plaintiff's "opposition papers, however, addressed none of these claims").  Here, the Complaint asserts the following causes of action: corporate waste, breach of fiduciary duty (derivatively and directly), unjust enrichment, conversion, unfair competition, and aiding and abetting those claims, as well as constructive trust and accounting. (Docket No. 1-1).  Defendants' summary judgment motion specifically addressed each of these claims, (Docket No. 56 at 20-26), though the accounting claim is only

mentioned in a footnote and discussed in relation to Plaintiff's breach of fiduciary duty claim, (*Id.* at 22, n.2).  Plaintiff's opposition, however, fails to respond to any of Defendants' arguments, except for the breach of fiduciary duty claim, so the Court deems these claims abandoned. (Docket No. 68 at 7-9).  Thus, the Court grants summary judgment on Plaintiff's claims of corporate waste, unjust enrichment, conversion, unfair competition, and aiding and abetting those claims, as well as constructive trust.  Plaintiff's remaining claims of breach of fiduciary duty, aiding and abetting breach of fiduciary duty, and accounting are addressed below.

## A.  Breach of Fiduciary Duty

A breach of fiduciary duty claim under New York law[6] requires a showing of: "(i) the existence of a fiduciary duty; (ii) a knowing breach of that duty; and (iii) damages resulting therefrom." *Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 138 (2d Cir. 2011).  A shareholder can bring a breach of fiduciary duty claim directly to recover for "injury to him or herself individually" or derivatively, "to recover for injury to the business entity." *Yudell v. Gilbert*, 99 A.D.3d 108, 113 (1st Dep't 2012).  "It is black letter law that a [shareholder] has no individual cause of action against a person or entity that has injured the corporation… notwithstanding that the wrongful acts may have diminished the value of the shares of the corporation…or that the wrongdoer may ultimately share in the recovery in a derivative action if the wrongdoer owns shares in the corporation." *Serino v. Lipper*, 123 A.D.3d 34, 39 (1st Dep't 2014).  However, a narrow exception exists "where the wrongdoer has breached a duty owed directly to the shareholder which is independent of any duty owing to the corporation." *Id.*  "When analyzing whether a claim is derivative or direct, courts consider '(1) who suffered the alleged harm (the

---

[6] In a case proceeding under diversity jurisdiction, a federal court applies the choice of law rules of the forum state. *See GlobalNet Financial.Com, Inc. v. Frank Crystal & Co., Inc.*, 449 F.3d 377, 382 (2d Cir. 2006).  Here, the parties do not dispute that New York law governs.

corporation or the [shareholders]); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the [shareholders] individually).'" *Abate v. Fifth Third Bank*, No. 13-CV-9078 (VSB), 2018 WL 1569260, at *5 (S.D.N.Y. Mar. 27, 2018) (quoting *Yudell*, 949 N.Y.S.2d at 384).

Here, Plaintiff's complaint alleges breach of fiduciary duty claims both individually and derivatively. (Docket No. 1-1 ¶¶ 60-66, 99-103).  However, Plaintiff does not assert that Defendants breached a duty owed directly to him independent of any duty owed to Sally Sherman. (*Id.*).  Further, Sally Sherman rather than Plaintiff suffered the alleged harm and would benefit from any recovery received.[7] (*Id.*).  As discussed below, Plaintiff's theory of damages involves the loss Sally Sherman suffered based on each transaction with ACE Endico due to the discount arrangement as well as due to its alleged diminution in value, rather than any loss specifically to Plaintiff. (Docket No. 68 at 8-9).  Though any loss to Sally Sherman from either the discount arrangement or its loss of value would be a loss to Plaintiff as 50% owner of the company, "[t]he lost value of an investment in a corporation is quintessentially a derivative claim by a shareholder." *Serino*, 123 A.D.3d at 41; *see also Abate*, 2018 WL 1569260, at *6 ("Courts routinely refuse to permit shareholders to recover for alleged diminution in the value of their corporate stock.").  Accordingly, Plaintiff's individual claim for breach of fiduciary duty is dismissed.[8]

---

[7] While it is true that in "a closely-held family business" co-owned by family members, "a separate fiduciary duty arises from [the parties] status as family members," Plaintiff does not contend that such a separate fiduciary duty exists here and does not allege separate harm that differs from that of "the arm's length shareholder whose stock value would be affected by the individual defendants' conduct." *Newman v. Newman*, 202 A.D.3d 442, 443 (1st Dep't 2022) (finding that the amended complaint sufficiently pled facts sufficient to support an individual claim for breach of fiduciary duty where the "amended complaint specifically allege[d] that plaintiff could face personal liability arising from defendants' actions.")

[8] Although the parties do not discuss Plaintiff's individual claim in their submissions, the Court addresses it herein because it is plead in the Complaint as the Thirteenth Cause of Action. (*See* Docket No. 1-1).

The Court now turns to Plaintiff's derivative claim against Defendants for breach of fiduciary duty owed to Sally Sherman.  A corporate officer's fiduciary duties to the corporation consist of the duty of care and the duty of loyalty. *See United States Small Bus. Admin. v. Feinsod*, 347 F. Supp. 3d 147, 158 (E.D.N.Y. 2018).  The duty of care refers to a corporate officer's obligation to "discharg[e] corporate responsibilities in good faith and with conscientious fairness, morality and honesty in purpose and display[] good and prudent management of the corporation." *In re Ampal-Am. Israel Corp.*, 543 B.R. 464, 481 (Bankr. S.D.N.Y. 2016) (internal quotations omitted).  A fiduciary must exercise "that degree of care which an ordinarily prudent person in a like position would use under similar circumstances." *In re Firestar Diamond, Inc.*, 634 B.R. 265, 302 (Bankr. S.D.N.Y. 2021).  "[T]he duty of loyalty[] derives from the prohibition against self-dealing that inheres in the fiduciary relationship." *Norlin Corp. v. Rooney, Pace Inc.*, 744 F.2d 255, 264 (2d Cir. 1984). "[T]he duty of loyalty dictates that [officers] may not assume and engage in the promotion of personal interests which are incompatible with the superior interests of their corporation." *In re Perry H. Koplik & Sons, Inc.*, 499 B.R. 276, 289 (S.D.N.Y. 2013), *aff'd*, 567 F. App'x 43 (2d Cir. 2014) (internal quotations omitted).

Under New York law, the business judgment rule "bars judicial inquiry into actions of corporate directors taken in good faith and in the exercise of honest judgment in the lawful and legitimate furtherance of corporate purposes." *Auerbach v. Bennett*, 47 N.Y.2d 619, 629 (1979). However, "[i]t is black-letter, settled law that when a corporate … officer has an interest in a decision, the business judgment rule does not apply." *In re Croton River Club. Inc.,* 52 F.3d 41, 44 (2d Cir. 1995).  "Generally, a conflict exists where a manager is on 'both sides' of a proposed transaction … [and is] 'self-interested' in a transaction where he or she 'will receive a direct

financial benefit from the transaction which is different from the benefit to shareholders generally.'" *In re Soundview Elite Ltd.*, 594 B.R. 108, 128-29 (Bankr. S.D.N.Y. 2018).  Once a prima facie showing of self-interest, self-dealing or bad faith is demonstrated, "the duty of loyalty supersedes the duty of care, and the burden shifts to the [fiduciaries] to prove that the transaction was fair and reasonable to the corporation." *Norlin Corp.*, 744 F.2d at 264-65 (internal quotations omitted).

Here, Defendants do not dispute that William owed a fiduciary duty to Sally Sherman because William effectively served as CEO of Sally Sherman. (Docket No. 58 ¶ 32; Docket No. 65 ¶ 32).  As a corporate officer, William "owe[d] fiduciary duties… to [the] corporation." *Feinsod*, 347 F. Supp. 3d at 158.

The elements in dispute are whether there was a knowing breach of the duty of loyalty and whether that breach proximately caused damages.  Defendants contend that Plaintiff fails to raise a genuine issue of material fact showing that William breached his fiduciary duty and that damages resulted, nor does he offer any admissible evidence regarding damages. (Docket No. 56 at 17-22; Docket No. 69 at 6-14).  Plaintiff argues that William breached his fiduciary duty of loyalty by granting price discounts to ACE Endico while serving as CEO of Sally Sherman, and maintains that the resulting damages stem from the price discounts themselves as well as from Sally Sherman's diminished book value. (Docket No. 68 at 7-9).

## 1.  Breach

The record reveals genuine issues of material fact regarding whether Defendants knowingly breached their duty of loyalty to Sally Sherman.  It is undisputed that in 1985, Michael instituted a 10% discount for ACE Endico, which continued until his death in 2010, remained while Mr. Nohavicka was executor and manager of Sally Sherman, and had been in place for over twenty-five years by the time William became CEO. (Docket No. 65 ¶¶ 15-17).

There is also no dispute that Sally Sherman applied this discount to all master distributors. (*Id*. ¶ 16).  Further, the parties agree that in 2017, William reduced the discount that Sally Sherman gave to ACE Endico from 10% to 6%. (Docket No. 58 ¶ 37; Docket No. 65 ¶ 36).

However, the parties dispute whether William, as a majority shareholder of ACE Endico, received a benefit from this discount arrangement.  Plaintiff focuses on each purchase between the two entities that occurred at a discount, (Docket No. 68 at 7-8), whereas Defendants consider the entire relationship between them, (Docket No. 56 at 22).  Defendants maintain that rather than benefiting from its transactions with Sally Sherman, ACE Endico suffered a loss from the sum of this business relationship. (Docket No. 56 at 22; Docket No. 58 ¶ 36; Docket No. 69 at 13).  Plaintiff counters that in each transaction, ACE Endico benefited by paying below market price. (Docket No. 66 ¶ 21).

The parties also dispute whether the overall relationship between Sally Sherman and ACE Endico benefited Sally Sherman.  Plaintiff acknowledges certain specific benefits to the relationship, including that Sally Sherman was able to address its cash flow and credit problems when ACE Endico issued Sally Sherman approximately $500,000 in credit and permitted it to not repay that sum but rather maintain it as an account receivable. (Docket No. 65 ¶ 39).  It is also undisputed that ACE Endico employees sent leads and other potential new business to Sally Sherman at no cost or fee, (*id*. ¶ 42), and that ACE Endico assisted Sally Sherman when it had difficulty getting supplies from Restaurant Depot and had trouble delivering products with its limited number of delivery trucks, (*id*. ¶ 41).  However, Plaintiff generally states that there were also negative aspects to the relationship, with the negative outweighing the positive, (*id*. ¶ 43; Docket No. 67-1 at 80:18-82:22).  Plaintiff maintains that the loss Sally Sherman suffered from receiving less revenue from each sale to ACE Endico than it otherwise would have received

outweighs the positive aspects of the relationship. (Docket No. 66 ¶ 21).  Plaintiff also disputes

that the $100,000 loan that ACE Endico issued to Sally Sherman was interest free given that

ACE Endico was buying products from Sally Sherman below cost and receiving a 10% discount

on all purchases. (Docket No. 65 ¶ 40; Docket No. 67-1 at 185:12-21, 187:14-18).

      Further, the parties dispute whether the 10% and 6% discounts were excessive.

Defendants claim that the 10% discount was fair because it had been in place for decades and

was applied to other master distributors. (Docket No. 56 at 22; Docket No. 69 at 13).  However,

Plaintiff argues that the 10% and 6% discounts were above industry standards and that it was

improper for William to maintain the discount when William became CEO of Sally Sherman.

(Docket No. 60-2 at 188:17-194:5; Docket No. 68 at 8).

      Given these two competing narratives and drawing inferences in favor of Plaintiff, there

are genuine disputes of material fact regarding whether William breached his duty of loyalty to

Sally Sherman.  First, Plaintiff has made a prima facie showing that William had a conflict of

interest in transactions between Sally Sherman and ACE Endico because when William became

CEO of Sally Sherman and remained majority owner of ACE Endico, he was on both sides of the

transactions and received a direct financial benefit from the discount arrangement. *See In re

Soundview Elite Ltd.*, 594 B.R. at 128-29.  Even if there was not "blatant self-dealing," as CEO

of Sally Sherman, William was obligated to avoid situations in which his "personal interest

possibly conflict[ed] with the interest of those owed a fiduciary duty." *Birnbaum v. Birnbaum*,

73 N.Y.2d 461, 466 (1989).  The fact that William was "not motivated by ill will but merely

continued past practices of his father" is of no moment. *See Natoli*, 1988 WL 53397, at *3, 8.

Given that a prima facie showing of self-interest is established,[9] the business judgment rule does not apply and the burden shifts to William to demonstrate that the transaction was "fair and reasonable to the corporation." *Norlin Corp.*, 744 F.2d at 265.  On the record before it, the Court cannot determine as a matter of law whether William's decisions to maintain the discount at 10% once he became CEO and to subsequently reduce it to 6% were fair and reasonable to Sally Sherman.  Namely, the record is devoid of any explanation as to how William decided to maintain and then reduce the discount.  Since there is "little in the record on this issue other than the parties' opposing contentions, there are genuine issues of material fact that ultimately must be determined by a trier of fact." *Design Strategies, Inc. v. Davis*, No. 02-CIV-5329(VM), 2004 WL 1394327, at *5 (S.D.N.Y. June 22, 2004) (denying summary judgment for breach of fiduciary duty claim).  A reasonable factfinder could conclude that William violated his fiduciary duty by not reducing the discount sooner – he only did so in 2017 even though he became CEO in 2012 – or should have reduced it to the industry standard.  On the other hand, a reasonable factfinder could determine that the relationship with ACE Endico benefited Sally Sherman overall and that William's decision to maintain the discount arrangement at 10% in order to continue this beneficial relationship was fair and reasonable. *See Benson v. RMJ Sec. Corp.*, 683 F. Supp. 359, 376 (S.D.N.Y. 1988) ("It is for a jury to determine whether, in light of all the circumstances, including … the course of dealing of the [] shareholders and the ongoing negotiations…, the [] transaction was fair, meeting the fiduciary obligations that the law imposes..."); *Smith on behalf of 50 E. 69th St. Corp. v. Smith*, No. 17-CIV-6648(PAE), 2019 WL 1755517, at *15 (S.D.N.Y. Apr. 19, 2019) (holding in a breach of fiduciary duty case that

---

[9] Since a prima facie showing of self-interest has been made here, "the duty of loyalty supersedes the duty of care" and thus, the Court's analysis solely concerns the alleged breach of Defendants' duty of loyalty. *See Norlin Corp.*, 744 F.2d at 264-65.

whether a lease termination payment was fair is a matter "in which minds may differ, and they turn on disputed inferences as to the motivation and need for the payment, as to which a jury's assessment of witness credibility may prove decisive."). Thus, the Court cannot determine as a matter of law on the record before it that William did not breach his fiduciary duty to Sally Sherman.

## 2. Damages

The final element of a breach of fiduciary duty claim is whether the breach caused any damages.

> [U]nder New York law, the level of causation required in breach of fiduciary duty … cases depends on the type of remedy sought. Where [] the remedy sought is damages to compensate for a claimant's loss, the usual damages-causation rule for tort and contract breach cases is appropriate, but where [] the remedy being sought is a restitutionary one to prevent the fiduciary's unjust enrichment as measured by his ill-gotten gain, the less stringent 'substantial factor' standard may be more appropriate.

*LNC Invs., Inc. v. First Fid. Bank, N.A. New Jersey*, 173 F.3d 454, 465 (2d Cir. 1999) (internal quotations and citations omitted). Thus, where compensatory damages are sought in breach of fiduciary duty cases, the usual damages-causation rule for tort and contract breach cases requires that the plaintiff "prove not only that the breach was the 'but for' cause of the damage, but also that it constituted proximate causation." *BNY Cap. Markets, Inc. v. Moltech Corp.*, No. 99 CIV. 11754 (GEL), 2001 WL 262675, at *10 (S.D.N.Y. Mar. 14, 2001) (citing *LNC Invs., Inc.* 173 F.3d at 465). Here, Plaintiff sets forth two theories of damages: (1) that each transaction with ACE Endico incurred a loss to Sally Sherman due to the discount arrangement, and (2) that the discount arrangement caused Sally Sherman's book value to diminish. (Docket No. 68 at 8-9).[10]

---

[10] In his complaint, Plaintiff also alleges that while William has been in control of Sally Sherman, the reported annual gross sales of Sally Sherman declined by at least $6 million from the level of annual sales in 2012 to the level of annual gross sales in 2016. (Docket No. 1-1 ¶ 47). Plaintiff does not reaffirm this argument for damages in his briefing opposing summary judgment, but to the extent that he seeks to rely on such a theory of damages at trial, it is precluded for the same reasons set forth herein relating to Plaintiff's book value argument.

Plaintiff asserts that ACE Endico "wrongfully profited every time it purchased products from Sally Sherman at discounts decided by William." (Docket No. 65 ¶ 36).  In his declaration, Plaintiff similarly states that "[e]very time William granted a discount from Sally Sherman to ACE ENDICO for purchase of Sally Sherman products, it results in a financial loss to Sally Sherman by causing Sally Sherman to receive less revenue from the transaction than it would have otherwise received, so that ACE ENDICO could benefit financially by the discounted price at Sally Sherman's expense." (Docket No. 66 ¶ 21).  In effect, Plaintiff's argument is that by virtue of the discount arrangement, Sally Sherman suffered a loss on each transaction with ACE Endico because it made less on each purchase than it did with other customers and gave up more than was the industry standard.  Since this argument assumes that the loss is inherent to the discount, and the parties do not dispute that Sally Sherman gave a 10%, and subsequently a 6%, discount to ACE Endico, (Docket No. 65 ¶¶ 15; Docket No. 58 ¶ 37; Docket No. 65 ¶ 36), there is admissible evidence that Defendants' alleged breach caused Sally Sherman to suffer damages. Therefore, if the jury credits Plaintiff's theory that once William became CEO, he should have reduced the discount to industry standards, then a reasonable jury could conclude that Sally Sherman suffered a loss on each subsequent transaction with ACE Endico after William became CEO.  Accordingly, summary judgment is denied and Plaintiff may proceed on his derivative breach of fiduciary duty claim based on damages that resulted from the discount that Sally Sherman afforded ACE Endico.

On the other hand, Plaintiff fails to provide admissible evidence to support his theory that Defendants' alleged breach caused Sally Sherman's book value to diminish.  "To create a disputed fact sufficient to deny summary judgment, the non-moving party must produce evidence in the record and may not rely simply on conclusory statements." *Capitol Recs., LLC v.*

*Escape Media Grp., Inc.*, No. 12-CV-6646(AJN), 2015 WL 1402049, at *19 (S.D.N.Y. Mar. 25, 2015) (internal quotations omitted); *see also Harewood v. New York City Dep't of Educ.*, No. 18-CIV-5487(KPF), 2021 WL 673476, at *21 (S.D.N.Y. Feb. 22, 2021), *aff'd*, No. 21-584-CV, 2022 WL 760739 (2d Cir. Mar. 14, 2022) ("To receive consideration, evidence submitted in support of or in opposition to a motion for summary judgment must be admissible at trial."). Plaintiff asserts in a conclusory fashion that "the diminished value of Sally Sherman [] has accrued during the time it allowed price discounts to ACE Endico." (Docket No. 68 at 9).  In making this assertion, Plaintiff does not demonstrate that the discounts were the 'but for' cause of Sally Sherman's overall financial loss, nor that they were the proximate cause of such loss. "In the absence of a causal link between defendants' alleged wrongful conduct and plaintiff's alleged damages, the complaint must be dismissed." *R.M. Newell Co. v. Rice*, 236 A.D.2d 843, 844 (4th Dep't 1997) (affirming grant of summary judgment dismissing breach of fiduciary duty claims); *see Blum v. Spaha Cap. Mgmt., LLC*, 44 F. Supp. 3d 482, 497 (S.D.N.Y. 2014) (granting Defendant's summary judgment motion on a breach of fiduciary duty claim in part because Plaintiff failed to produce any evidence establishing that Defendant's misconduct caused Plaintiff to incur damages).  Even applying the less stringent substantial factor test, Plaintiff fails to argue or show that the discounts were a substantial factor in Sally Sherman's alleged diminished book value.  Though Plaintiff references that federal tax returns provided in discovery demonstrate the diminished value of Sally Sherman, (Docket No. 68 at 9), they would not demonstrate that this diminished value was caused by the discount arrangement with ACE Endico.

Further, Plaintiff relies only on his own declaration, rather than any expert testimony,[11] to suggest that the discounts caused Sally Sherman's book value to diminish. (Docket No. 65 ¶ 45; Docket No. 66 ¶ 22). "[W]here a party relies on affidavits or deposition testimony to establish facts, the statements 'must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.'" *DiStiso v. Cook*, 691 F.3d 226, 230 (2d Cir. 2012) (quoting Fed. R. Civ. P. 56(c)(4)); *see also* Fed. R. Evid. 602. However, the record does not demonstrate that Plaintiff has any personal knowledge regarding the financial impact of Sally Sherman's transactions with ACE Endico on Sally Sherman's book value. *Abraham v. Leigh*, 471 F. Supp. 3d 540, 554 (S.D.N.Y. 2020), *reconsideration denied*, No. 17-CIV-5429(KPF), 2020 WL 5095655 (S.D.N.Y. Aug. 28, 2020), *appeal dismissed*, No. 20-3320, 2021 WL 4520983 (2d Cir. Feb. 18, 2021) (finding that "Plaintiff's declarations attempt to offer testimony about events of which the declarant had no direct knowledge, in contravention of Federal Rule of Evidence 602" which is insufficient to defeat Defendant's motion for summary judgment).

Plaintiff cannot rely on his own testimony at trial that Sally Sherman's value diminished and that this diminishment was caused by the discount arrangement because it is improper lay opinion, and therefore, not admissible. *MarketXT Holdings, Corp*., No. 04-12078(ALG), 2011 WL 1422012, at *6 (Bankr. S.D.N.Y. Jan. 7, 2011) ("The art of valuing a business requires the exercise of well-informed judgment… Given the inherently subjective and fact-intensive nature of valuation and projection of profits, however, testimony from non-experts regarding the profitability of the [company] … must be excluded as improper lay opinion."). Furthermore, Plaintiff cannot rely on his personal business experience to testify about Sally Sherman's

---

[11] Indeed, Defendants state that Plaintiff forewent expert discovery in this case. (Docket No. 56 at 18).

valuation and the cause of its diminishment.  Federal Rule of Evidence 701 permits the owner or officer of a company to testify to its value based on their particularized knowledge and position in the business. Fed. R. Evid. 701 Advisory Comm. Notes, 2000 Amendments.  However, the business owner must establish that he "did such financial analysis as a regular part of his job," *Irish v. Tropical Emerald LLC*, No. 18-CV-82(PKC)(SJB), 2021 WL 5899048, at *3 (E.D.N.Y. Dec. 14, 2021), *aff'd in part, modified in part*, 2022 WL 2716182 (E.D.N.Y. July 13, 2022), and has personal experience running the company, including a past history of sales, trends of historic growth, as well as firsthand knowledge of the company's capital structure, sales and assets, *Washington v. Kellwood Co*., No. 05-CV-10034(SN), 2016 WL 5680374, at *5-*6 (S.D.N.Y. Sept. 30, 2016), *aff'd*, 714 F. App'x 35 (2d Cir. 2017).  Here, Plaintiff is not an officer of Sally Sherman, and though he is 50% owner, there is no evidence in the record that he has firsthand, particularized information about Sally Sherman's financial status or that he does financial analyses for the company in his role as owner.  In fact, Plaintiff asserts that his access to Sally Sherman's financial records and executive staff is limited. (Docket No. 65 ¶¶ 53, 55, 56).  Thus, Plaintiff cannot introduce evidence about Sally Sherman's valuation, and the impact of the discounts on it, through his own testimony.  Accordingly, summary judgment is granted as to Plaintiff's claim for damages based on an alleged decrease in Sally Sherman's book value, and he will not be permitted to offer any such evidence at trial.

## B. Aiding and Abetting Breach of Fiduciary Duty

Plaintiff alleges in the Complaint that ACE Endico aided and abetted William's breach of fiduciary duty, (Docket No. 1-1 ¶¶ 67-70, 104-107).[12] Although this claim is arguably abandoned

---

[12] Plaintiff brings his claims for aiding and abetting breach of fiduciary duty both individually and derivatively. (Docket No. 1-1 ¶¶ 67-70, 104-107).  Given that the Court has already determined that Plaintiff cannot bring an individual claim for breach of fiduciary duty, he also cannot bring an individual claim for aiding and abetting breach

because Plaintiff does not discuss this claim in his opposition to summary judgment, (Docket No. 68), the Court will nonetheless address the merits of the claim.

> Under New York law, there are three elements to a claim for aiding and abetting a breach of fiduciary duty. The first element is a breach by a fiduciary of obligations to another, of which the aider and abettor had actual knowledge… The second element is that the defendant knowingly induced or participated in the breach; and the third element is that plaintiff suffered damage as a result of the breach.

*In re Sharp Int'l Corp.*, 403 F.3d 43, 49 (2d Cir. 2005) (internal quotations omitted). "A person knowingly participates in a breach of fiduciary duty only when he or she provides 'substantial assistance' to the primary violator … Substantial assistance occurs when a defendant affirmatively assists, helps conceal or fails to act when required to do so, thereby enabling the breach to occur." *Kaufman v. Cohen*, 307 A.D.2d 113, 126 (1st Dep't 2003) (internal citations omitted); *see also Design Strategies, Inc. v. Davis*, 384 F. Supp. 2d 649, 671 (S.D.N.Y. 2005), *aff'd sub nom. Design Strategy, Inc. v. Davis*, 469 F.3d 284 (2d Cir. 2006) ("The burden of demonstrating actual knowledge, although not insurmountable, is nevertheless a heavy one.").

As discussed above, there are genuine issues of material fact regarding whether William breached his fiduciary duty.  However, nothing in the record suggests that ACE Endico had actual knowledge of William's alleged breach and knowingly participated in it.  Plaintiff provides no evidence to suggest that ACE Endico provided substantial assistance to William in maintaining the discount arrangement, such as affirmatively aiding the arrangement or failing to change the discount.  Further, "the mere inaction of an alleged aider and abettor constitutes substantial assistance only if the defendant owes a fiduciary duty directly to the plaintiff." *Kaufman,* 307 A.D.2d at 126.  Here, ACE Endico did not owe a fiduciary duty directly to

---

of fiduciary duty.  In any event, any claim for aiding and abetting breach of fiduciary duty must be dismissed for the additional reasons set forth herein.

Plaintiff.  Plaintiff "cites to no evidence supporting any inference" that ACE Endico owed a fiduciary duty to him and "does not argue in its brief" that ACE Endico owed him a fiduciary duty. *See In re Platinum-Beechwood Litig.,* 453 F. Supp. 3d 645, 653 (S.D.N.Y. 2020).  Thus, any inaction on ACE Endico's part regarding the continued discount arrangement does not constitute aiding and abetting William's alleged breach.  Because Plaintiff "bears the burden of proving" that ACE Endico "knowingly participated" in William's breach of fiduciary duty and because Plaintiff "has not proffered evidence that reasonably supports such a finding," Plaintiff's aiding and abetting fiduciary duty claims fail. *See BS Norwalk One, Inc. v. Raccolta, Inc.*, 60 F. Supp. 2d 123, 132 (S.D.N.Y. 1999), *aff'd*, 205 F.3d 1321 (2d Cir. 2000) (applying Delaware law but acknowledging that "[t]he New York law governing a claim of aiding and abetting is not materially different.").

Even assuming that Plaintiff could prove ACE Endico's knowing participation in the alleged breach, Plaintiff's claim against ACE Endico separately fails because "a corporation cannot aid and abet violations by the fiduciaries who serve it." *Buttonwood Tree Value Partners, L.P. v. R.L Polk & Co.*, No. CIV.A. 9250(VCG), 2014 WL 3954987, at *5 (Del. Ch. Aug. 7, 2014).[13]  Plaintiff is essentially trying to hold ACE Endico separately liable when it could only have acted through William, its majority owner. *See id*. ("[A] corporation acts through its directors. The only way that [the Defendant corporation] could have aided and abetted its directors' breaches of fiduciary duties is *through* those directors—the very same actors whom the [corporation] is alleged to have aided. Consequently, [] Plaintiff['s] aiding and abetting claim against [the corporation] lacks the knowing participation of a requisite third party.").

---

[13] Though this case applies Delaware law, "[w]here New York law is not as robust as Delaware law regarding matters of fiduciary duties, New York courts have looked to Delaware law for guidance." *In re Firestar Diamond*, Inc., 634 B.R. 265, 301 (Bankr. S.D.N.Y. 2021).  Further, "[t]he New York law governing a claim of aiding and abetting is not materially different" from Delaware law. *BS Norwalk One, Inc.* 60 F. Supp. 2d at 132.

Accordingly, the Court grants summary judgment to Defendants on Plaintiff's aiding and abetting claims.

## C.  Accounting

Plaintiff also brings a claim for an accounting against William and ACE Endico based on William's alleged breach of fiduciary duty and ACE Endico's aiding and abetting that breach. (Docket No. 1, Ex. A ¶¶ 95-98).  Plaintiff asserts that Sally Sherman is entitled to an accounting with respect to "all past and ongoing transactions" between Sally Sherman and William, ACE Endico, or any entity owned or directly or indirectly controlled by William or ACE Endico, and "an accounting with respect to all monies, revenue, profits or things of value obtained, or to be obtained," by William and ACE Endico at the expense of Sally Sherman.  (*Id*. ¶ 98).

"Under New York law, the elements of a claim for an equitable action for an accounting are: (1) a relationship of a fiduciary or confidential nature; (2) money or property entrusted to the defendant imposing upon him the burden of accounting; (3) the absence of an adequate legal remedy; and (4), in some cases, a demand for an accounting and a refusal." *Grgurev v. Licul*, 229 F. Supp. 3d 267, 290 (S.D.N.Y. 2017).  "An action for an equitable accounting is premised upon establishing the existence of a confidential or fiduciary relationship and a breach of the duty imposed by that relationship respecting property in which the party seeking the accounting has an interest." *Murphy v. Virda Netco Establishment*, No. 19-CIV-5198(JGK)(RWL), 2020 WL 1865537, at *3 (S.D.N.Y. Mar. 3, 2020), *report and recommendation adopted*, 2020 WL 1862592 (S.D.N.Y. Apr. 14, 2020) (internal quotations omitted).

Defendants argue in a footnote that summary judgment should be granted on the accounting claim because there are no genuine issues of material fact as to the alleged breach of fiduciary duty. (Docket No. 56 at 22-23, n.2).  However, the Court finds genuine issues of material fact as to whether William breached his fiduciary duty to Sally Sherman, as discussed

26

above.  Defendants also argue that "Sally Sherman has already provided Plaintiff with the entirety of its bookkeeping records." (*Id.*).  However, "[c]ourts applying New York law have repeatedly observed that an action for an accounting is not mooted by the production of financial documents" in discovery. *Soley v. Wasserman*, No. 08-CIV-9262(KMW)(FM), 2013 WL 526732, at *6 (S.D.N.Y. Feb. 13, 2013) (collecting cases) (denying defendant's summary judgment for Plaintiff's accounting claim).  Defendants provide no other arguments or factual evidence regarding Plaintiff's accounting claim, and thus fail to establish as a matter of law that no genuine issues of material fact exist as to Plaintiff's entitlement to an accounting. *See, e.g., Snider v. Lugli*, No. 10-CV-4026(SJF)(AKT), 2013 WL 888485, at *5 (E.D.N.Y. Mar. 7, 2013) (denying defendants' motion for summary judgment for Plaintiff's accounting claim where "[d]efendants [] failed to establish as a matter of law that no genuine issue of material fact exists with respect to whether plaintiff entrusted property to defendants.").  Consequently, Defendants' motion for summary judgment is denied with respect to Plaintiff's accounting claim against William.

Defendants also argue that the accounting claim against ACE Endico fails because ACE Endico does not owe a fiduciary duty to Plaintiff. (Docket No. 56 at 22-23, n.2).  As discussed above, the Court agrees.  Because an essential element of an accounting claim is a fiduciary duty between Plaintiff and Defendant and no such fiduciary duty exists here between Felix and ACE Endico, Defendants' motion for summary judgment on Plaintiff's accounting claim against ACE Endico is granted. *See Russell Pub. Grp., Ltd. v. Brown Printing Co.*, No. 13-CIV-5193(SAS), 2014 WL 1329144, at *4 (S.D.N.Y. Apr. 3, 2014) ("In order to sustain an equitable action for accounting under New York law, a plaintiff must show either a fiduciary or confidential relationship with the defendant…Where a party bringing an action for an accounting has 'failed

27

to allege the existence of a fiduciary or otherwise confidential relationship ... the accounting claim merits dismissal.'").

## IV.  CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is granted in part and denied in part.  In summary, Defendants are entitled to summary judgment on the following claims, which are dismissed in their entirety: corporate waste, unjust enrichment, conversion, unfair competition, and aiding and abetting those claims, as well as constructive trust and Plaintiff's direct claim for breach of fiduciary duty.  Summary judgment is also granted on Plaintiff's aiding and abetting breach of fiduciary duty claims and his accounting claim against ACE Endico.  Summary judgment is denied on Plaintiff's derivative breach of fiduciary duty claim and accounting claim against William.  However, at trial, Plaintiff may not rely on his book valuation theory of damages for his derivative breach of fiduciary duty claim.

The Clerk is respectfully requested to terminate the pending Motion (Docket No. 55).

Dated:   August 23, 2022
         White Plains, New York

SO ORDERED:

JUDITH C. McCARTHY
United States Magistrate Judge